IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICAN,
    Plaintiff,

vs.                                                            No. 16-2675-JTM

MIGUEL OTERO,
    Defendant.

MEMORANDUM AND ORDER

Defendant Miguel Otero is charged with violating 18 U.S.C. § 922(g)(1) and 924(a)(2) for possession of a firearm and ammunition after having been previously convicted of a felony.[1] The charges arise from an incident which arose on April 6, 2016, when Albuquerque police officers responded to a call from the maintenance person at an apartment complex. The report, made shortly before noon, indicated that a blue Chrysler 300 had been parked at the complex and had been idling since the maintenance worker's shift began at 8:00 a.m.

---

[1] According to the pleadings, Otero has previously been convicted of two counts of armed robbery, conspiracy to commit burglary, and kidnapping.

The police undertook a welfare check, and found Otero asleep in the vehicle, along with a firearm and a glass tube, of the type used for ingesting drugs. The officers detained Otero and retrieved the firearm from the vehicle. The court conducted an evidentiary hearing on Otero's motions. Both officers testified at the hearing, and the court viewed two videotapes made at the scene.

The defendant presents two closely-connected motions (Dkt. 55, 56), seeking suppression of the search of the vehicle, and his arrest. The first motion argues that the police illegally searched the vehicle without consent,[2] and the second argues that the police unlawfully arrested defendant (by placing him in handcuffs after removing him from the vehicle), and that the subsequent search of the vehicle is fruit of the poisonous tree. Having reviewed all of the evidence, as well as the additional briefs submitted by the parties after the hearing, the court concludes that the motions should be denied.

The police acted reasonably in temporarily securing the scene given the presence of a firearm and drug paraphernalia. The officers did not need consent to search the vehicle, as their limited detention of Otero and the firearm were justified by a concern of public safety as well as a reasonable suspicion of criminal activity. While Otero was being

---

[2] The officers initially reported that the Otero vehicle was searched with his consent, but the government does not argue here that the search is justified by consent. Rather, it argues that the search was appropriate under the plain view doctrine, the automobile exception, probable cause, and/or the community caretaker function. The videotape indicates that one of the officers asked Otero if he could look into the vehicle, but, because of wind noise, Otero's response is not audible.

lawfully detained, the police learned of an outstanding warrant for his arrest. The search was not the "fruit," poisonous or otherwise, of an illegal arrest.

Both officers testified credibly. The evidence establishes that when the officers approached the vehicle, with their weapons in low ready, they found a man (who proved to be Otero) lying on the driver side with the seat reclined. Det. Cody Holmes, the officer approaching the passenger side, saw that Otero was sleeping with a handgun in his lap. Holmes was at that time immediately next to the open passenger window, and was in a good position to view the firearm. Although he saw only the butt end of the weapon, he was able to identify accurately that it was a magazine-fed semiautomatic pistol.[3]

The police immediately backed up, and began to loudly direct Otero to exit the vehicle, and to keep his hands visible through the open driver side window. When Otero seemed to have difficulty doing both things at once, Holmes expedited matters by reaching into the passenger side and engaging the manual door unlock.

During the encounter, Otero appeared to comply with the officers' directives—in part. Otero got out with his car with his hands up, but he also approached at a rapid pace Officer Talia Rosenberg (the officer on the driver side) who was standing about the length

---

[3] The open possession of a firearm in itself is lawful in New Mexico. "The basic crime of unlawful carrying of a deadly weapon is contained in NMSA 1978, Section 30–7–2(A) (2001), which imposes a petty misdemeanor criminal penalty of up to six months in jail, and NMSA 1978, § 31–19–1(B) (1984), for carrying 'a concealed loaded firearm or any other type of deadly weapon anywhere, except' in one's automobile for personal protection, on one's real property, with a concealed firearms permit, or by a peace officer." *State v. Nick R.*, 2009-NMSC-050, ¶ 13, 147 N.M. 182, 185, 218 P.3d 868, 871 (2009).

of the vehicle away, and at times appeared to lower his hands towards his waist. In addition, the officers had to tell Otero several times to keep away from the vehicle.

Holmes then approached Otero and placed him in handcuffs. Holmes told Otero he was not under arrest, but they were being careful because they had seen that he had a gun. Otero falsely stated that he had no firearm.

Rosenburg asked for Otero's name and date of birth. From this information, she was able to learn Otero's social security number, and a second search found that there was an outstanding misdemeanor warrant for his arrest.

When Otero got out of the vehicle, he left the door open. After Otero denied having a gun, one of the officers approached the vehicle and (without then entering) pointed to the pistol in a holster, which although partly under the driver's seat, was in plain sight through the open door. Rather than verbally respond, the handcuffed Otero at one point approached the vehicle as if to sit inside it, and was physically pulled away from the open door.

Otero indicated he lived in the apartment complex. Holmes asked Otero how much he had smoked that morning, telling him he could see a crack pipe sitting in plain view. Holmes told Otero to be honest, as he could see the crack pipe. The officer then asked Otero whether the gun was stolen.

Only after all this occurred did the officers retrieve the gun through the open door of the vehicle. Later investigation showed that the firearm's serial number had been

obliterated, and it contained nine rounds of ammunition, one in the chamber and eight in the magazine.

As noted earlier, in addition to the firearm, the officers outside the vehicle observed a glass pipe, an item commonly used to smoke crack cocaine or methamphetamine, on the center console. A metal pipe was on the center console, along with a plastic baggie which appeared to have a white substance inside. Defendant was arrested on the outstanding warrant. After the police learned of his criminal record, he was charged with being in felon in possession of a firearm.

The defendant, during the course of his motion, makes several valid points — there is nothing illegal in sleeping in a car, that once he was handcuffed the level of threat was minimized, and that there were no additional passengers who might have caused a disturbance. But none of these arguments indicates that the police officers acted unreasonably under the circumstances of the case. The same can be said for the defendant's contention that the plain view doctrine is inapplicable, as "the officer may have seen part of the weapon, but it was not fully 'in plain view.'" (Dkt. 55, at 7). The defendant supplies no authority for the principle that police officers, seeing part of a weapon, may not assume that the rest is there as well.

It is inaccurate to simply say that the police no longer faced a potential danger after Otero was placed in handcuffs. First, as Officer Rosenberg testified, while the threat level might have diminished, it was not eliminated. It is more accurate, when viewing the

reasonableness of the officers' actions, to recognize that the threat level diminished precisely *because* Otero was placed in handcuffs.

The use of handcuffs does not in itself render Otero's detention an arrest. *See United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). Officers may use limited powers of detention if reasonable under the circumstances. The officers were making a welfare check, found a person who had been sleeping in his car for some three hours. Moreover, the car apparently had been idling all that time. The person was armed with a hand gun, sleeping with it on his lap. When ordered out of his vehicle, the man apparently tried to hide the gun on the floorboard, while also denying having any firearm.

*Perdue* is instructive. In that case the Tenth Circuit held that officers had not arrested defendant when, after he arrived on the scene where they were executing a search warrant, they pointed guns at him and ordered him to the ground. Rather, the detention, given the circumstances, was justified by reasonable suspicion. The detention was reasonable in light of the facts that "[t]he officers knew that guns were found on the property where marijuana was being cultivated." *Perdue*, 8 F.3d at 1463. The same is true here — the officers knew there was one (or more) firearms on the scene and there was evidence of narcotics use.[4]

---

[4] The *Perdue* court noted the growing consensus towards this view, especially with respect to temporarily handcuffing of an individual found in possession of firearms.

> This holding is consistent with the recent trend allowing police to use handcuffs or place suspects on the ground during a *Terry* stop. Nine courts of appeals, including the Tenth Circuit, have determined that such intrusive precautionary

The officers acted reasonably under the circumstances. Even if sleeping in a vehicle is not illegal, it is unusual. It is even more unusual if the vehicle is parked in a public area. And it is even more unusual still, if the person is sleeping in an idling car. The officers were also presented with multiple reasons to be concerned about Otero's conduct. While generally compliant with the officers' directions, at times Otero ignored orders to keep his hands up or to remain away from the vehicle. He apparently was using drugs. And he lied about having a gun.

This is not a case where officers handcuff a motorist after he has been pulled over for speeding. Rather, handcuffing Otero was the sort of "minimally intrusive precautionary measure" which may be justified by by a concern for public safety or by reasonable suspicion — here, that Otero was engaged in some potentially criminal

---

> measures do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment. *See, e.g., United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993) (display of firearms and use of handcuffs); *United States v. Smith*, 3 F.3d 1088 (7th Cir.1993) (handcuffs); *United States v. Saffeels*, 982 F.2d 1199, 1206 (8th Cir.1992) (handcuffs), *cert. granted, judgment vacated*, 510 U.S. 801, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993) *vacated on other grounds*); *United States v. Williams*, No. 91–3097, 1992 WL 308584 at *2 (D.C.Cir. Oct. 6, 1992) (unpublished opinion); *United States v. Esieke,* 940 F.2d 29, 36 (2d Cir.) (handcuffs and leg irons), *cert. denied*, 502 U.S. 992, 112 S.Ct. 610, 116 L.Ed.2d 632 (1991); *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir.1989) (handcuffs); *United States v. Hemphill*, [1985 WL 13433] (6th Cir. [1985])[,] (requiring suspects to lie on ground in handcuffs), *cert. denied*, 474 U.S. 982, 106 S.Ct. 388, 88 L.Ed.2d 340 (1985); *United States v. Kapperman*, 764 F.2d 786, 790 n. 4 (11th Cir.1985) (placing suspect in police car in handcuffs); *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir.1983) (making suspect lie on ground in handcuffs).

*United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993).

conduct involving a firearm. Again, the police had seen Otero with a gun, and had reason to believe that he was lying about it.

Temporarily handcuffing Otero was an appropriate precaution under the circumstances. *See United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996). It allowed the officers time to determine whether Otero or the firearm presented a threat to public safety while they investigated. And, just as they temporarily detained Otero, the police could temporarily detain the firearm by reaching into the vehicle and placing it, with the magazine removed, on the car hood.

Firearms in vehicles inherently generate concerns for public safety. *See United States v. Harlson*, 212 F. App'x 694, 696 (9th Cir. 2006) (where firearm was in vehicle was visible and window rolled down, "[s]earch of the vehicle and seizure of the firearm were also justified on public safety grounds"). *See also Resley v. Holmes*, 59 F. Supp. 2d 1164, 1172 (D. Kan. 1999) (rejecting defendant's argument that "her vehicle should have been simply locked, or that it should have been guarded until a search warrant obtained," as the police "may immediately seek to protect the public from firearms left in unattended vehicles"). Here, Otero's vehicle was not unattended, but the case presents similar concerns. Just as the police could temporarily handcuff Otero without arresting him, they could secure the firearm (in plain view, through an open car door) temporarily without it being a search.

Following *Michigan v. Long*, 463 U.S. 1032 (1983), the Tenth Circuit has agreed that if the police have reasonable grounds for believing that a motorist may be dangerous,

8

they may reasonably conduct "a protective search for firearms of the passenger compartment of a vehicle." *United States v. Leyva-Serrano*, 127 F.3d 1280, 1283 (10th Cir. 1997). "'[O]fficers must be allowed, during the course of [a *Terry*] stop, to take measures that are reasonably calculated to protect themselves or others from harm.'" *United States v. Tanguay*, No. 18-1271, 2019 WL 1091044, at *3 (1st Cir. Mar. 8, 2019) (quoting *United States v. Rasberry*, 882 F.3d 241, 247 (1st Cir. 2018) (citing *Flowers v. Fiore,* 359 F.3d 24, 30 (1st Cir. 2004) (police officer "can hardly be criticized for ordering [defendant's] removal from the vehicle and verifying that the weapon [visible] in the driver-side door was in fact a BB gun"))).

That state law may permit the lawful carrying of a firearm is not dispositive of the issue. As the Tenth Circuit observed in *United States v. King*, 990 F.2d 1552, 1561 (10th Cir. 1993), the "defendants' lawful possession of the pistol has no bearing on the reasonableness of Officer LeMasters' actions because the interest justifying her separation of Defendants from the pistol is her safety, and a legally possessed weapon presents just as great a danger to her safety as an illegal one."[5] Even if the firearm possession is

---

[5] *King* is otherwise factually district from the present case. In *King*, an officer responding to an accident report found the intersection congested and one vehicle "incessantly honking" at the car ahead. When she approached the vehicle, she saw that the driver had a pistol under his thigh. The court agreed that the officer was "entitled to separate Defendants from the pistol by ordering them out of the car," but concluded on the facts that her actions went "far beyond what was necessary to ensure her safety." *Id*. at 1563. The court stressed that the officer had only a limited reason for contacting the driver (his honking, which was not a crime in itself and which the driver promptly promised to stop), and the officer's actions in not only ordering the driver out of the vehicle but conducting what was "essentially an arrest procedure" (pointing her gun at the defendant and explicitly "threatening to shoot him" until backup arrived, at which time other

otherwise lawful, police have a valid interest in ensuring their safety and the safety of others, and may under appropriate circumstances temporarily secure that firearm.

Thus, in *United States v. Levy*, 217 F. Supp. 3d 643, 666 (E.D.N.Y. 2016), the court upheld the seizure of firearm as a reasonable protective action, after police were called to investigate "a car on a public road at 1:40 a.m. in a high-crime neighborhood, with a woman exiting the car while a man was leaning into it, apparently moving an object on the floor of the car," the court ultimately concluding that "[t]he officers were justified in determining whether defendant posed a danger by performing a limited search." Independently, the court held, the evidence was admissible under the plain view doctrine, as the gun "could be plainly viewed from a lawful position, which was the wide open car door." *Id* at 668.

The Western District of Louisiana recently addressed a similar issue in *United States v. Edmond*, 2018 WL 4178228, *6-7 (W.D.La. Aug. 8, 2018). In that case, officers responded to a traffic call of a vehicle blocking traffic — and that responding officers observed the occupant holding a firearm in his lap. The court wrote:

> Once the defendant exited his vehicle and was placed in handcuffs, the above-recited facts clearly allowed for a protective search of his person.

---

officers "encircle[d] defendant's car with weapons drawn, and, although defendant had made no "threatening gesture or sudden movement," he was held on his knees at gunpoint). 990 F.2d at 1562-63. This is markedly different from the present case. Here, the officers were able to see the see the crack pipe and had a reasonable suspicion Otero was using narcotics, Otero demonstrated repeated instances of disregarding the officers' directions, and he lied having a firearm. Moreover, their conduct was much more restrained — Det. Holmes stressed that Otero was not under arrest, and, once handcuffed, the interaction was relatively relaxed.

10

> Having observed a weapon on his person just minutes before, while the defendant was seated in the vehicle, the officers were authorized to conduct a protective search of the vehicle as well. The Fifth Circuit has "recognized that suspects in handcuffs can remain a danger to the police, particularly when weapons are present." Despite the defendant's argument to the contrary, the fact that his hands were "gun free" just minutes after a gun was observed in his hand, sitting on his lap, does not undermine or diminish the officers' reasonable belief, based on at least three independent observations, that a weapon was present. Both Officer Richard's testimony, as well as the video footage, supports the likelihood that the defendant stopped the vehicle in such an abrupt manner that a gun sitting on his lap could have easily been thrown onto the driver's side floorboard, where a gun was ultimately found. Because the initial stop and pat-down of the defendant was justified under *Terry*, the search of the car for weapons was also a valid *Terry* pat-down of the car.

*Id.* (footnotes omitted).

The Supreme Court of New Mexico recognized this same principle *in State v. Ketelson*, 150 N.M. 137, 257 P.3d 957 (2011). In that case, a police officer reached into a vehicle to secure a firearm observed on the back floorboard behind where the defendant had been sitting. At the time the officer "reached into the passenger compartment … to secure the firearm and unload the ammunition," the defendant was standing outside the vehicle, although not handcuffed. 257 P.3d at 963. In addition to finding that securing the firearm was a reasonable and minimal intrusion which did not offend the defendant's rights under Article II, Section 10 of the New Mexico constitution, the court also found the action appropriate under federal law, observing:

> We note that the federal courts have long stressed the importance of officer safety and the danger firearms pose during an officer interaction with a suspect. As the U.S. Supreme Court has observed, "[f]irearms are dangerous, and extraordinary dangers sometimes justify unusual precautions." *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254

(2000). The federal courts are keenly aware that traffic stops pose particular dangers to police officers. "An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation." *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir.2001) (*en banc*), *holding modified on other grounds by United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007).

In short, the officers had reasonable grounds conducting a public welfare check, and, after determining Otero was armed, for temporarily restraining both Otero and the firearm for reasons of officer safety. The handcuffing of Otero was not an arrest requiring probable cause. Similarly, under the circumstances, the securing and unloading of the firearm was not a search requiring probable cause.

Having reasonably and lawfully secured both Otero and the firearm, the police quickly acquired probable cause of criminal activity. They observed the crack pipe, indicating Otero was using narcotics, and that the firearm's serial number had been obliterated. They also quickly learned of an outstanding misdemeanor warrant for Otero's arrest. The court finds no grounds for suppressing the evidence obtained from the vehicle or any evidence based upon the alleged unlawful arrest of the defendant. Accordingly, both motions of the defendant are denied.[6]

---

[6] During the suppression hearing, defendant raised as a potential defense to the charge the fact that his underlying state conviction is currently on appeal. The court will address the issue should it be raised by motion, but for the present notes substantial authority holding that any reversal of the felony conviction would not retroactively legitimize the possession of firearms. *See Lewis v. United States*, 445 U.S. 55, 61 n. 5, 64 (1980) (rejecting claim of defendant charged as felon in possession of a firearm under 8 U.S.C. § 1202(a)(1) that the underlying felony conviction was invalid under the Sixth Amendment, as "Congress clearly intended that the defendant clear his status *before* obtaining a firearm," that this intent was "consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the

In supplemental briefing, defendant relies in particular upon the Tenth Circuit's recent decision in *United States v. Saulsberry*, 878 F.3d 946 (10th Cir. 2017). He argues that in light of this case, the officers' observation of the crack pipe did not supply probable cause for the expansion of the search of the vehicle and seizure of the firearm. The court finds that *Saulsbserry* does not support suppression of the evidence obtained by temporarily securing the firearm.

In *Saulsbserry*, the police received a tip that a person was smoking marijuana in a black Honda with Texas license plates parked in an Arby's parking lot. The officer first reaching the scene found a dark green Honda with Texas plates in the lot. When the officer approached the vehicle, he smelled bunt marijuana. The Tenth Circuit agreed that the initial detention was supported by probable cause, that there was probable cause to search the vehicle for marijuana, and indeed the defendant consented to the officer's search of the vehicle for that drug.

The police found a marijuana cigarette, but the defendant was not charged with that crime. Rather, after the police found a bag of credit cards in the vehicle, he was

---

conviction upon which that status depends has been vacated," and that "the disability … would apply while a felony conviction was pending on appeal") (emphasis in original)); *United States v. Kahoe*, 134 F.3d 1230, 1233 (1998) (under "[t]he plain language of § 921(a)(20)[,] a conviction that has been set aside can no longer be disabling" going forward, but disability remains in effect "between the time it was obtained and the time it was set aside"); *Barker v. United States*, 579 F.2d 1219, 1226 (10th Cir. 1978) (expressly agreeing with authority holding that "once one is convicted of a felony he is within the proscription against possession of firearms until that prior conviction is Actually [sic] overturned or expunged."

charged with possession of unauthorized credit cards in violation of 18 U.S.C. § 1029(a)(3). The Tenth Circuit concluded that "[i]n our view, a police officer's observation that a suspect possesses a number of cards (about 15) does not provide probable cause to believe that the suspect has been or is committing a crime." 878 F.3d 946, 952-53. The case did not involve any issue of officer safety, and in fact the court rejected that concern when the government suggested that probable cause might exist because an officer observed the defendant reaching into the bag:

> Defendant's suspicious movements toward the bag while Eastwood was questioning him are not sufficiently probative to raise the evidence to the level of probable cause. Even in hindsight it is hard to explain Defendant's reaching for the bag, *particularly since there was no gun there, as Eastwood could immediately tell upon looking in the bag*.

*Id*. at 953 (emphasis added).

Nothing in *Saulsberry* limits the ability of police to ensure that their interactions with citizens occur safely. As established in the previously cited cases, in appropriate circumstances this ability includes the right to briefly limit a citizen's access to a firearm which is known to exist at the scene.

Here, the officers knew Otero had a gun, and knew he was dissembling about having a gun. The officers were justified in briefly handcuffing the defendant and securing the firearm while he was questioned. The contraband status of the firearm with its obliterated serial number was immediately apparent when it was secured.

The court finds that the officers could reasonably secure the defendant and the firearm, and that the subsequent seizure of both was justified in when the officers learned

of the warrant for Otero's arrest and the obliterated serial number. Given this finding, the court need not resolve the additional argument advanced by the government (Dkt. 70, at 15-16) that the firearm would have been inevitably discovered and seized as being in plain view and as incident to Otero's arrest.

IT IS SO ORDERED this day of March, 2019, that the defendant's Motions to Suppress (Dkt. 55, 56) are hereby denied.

s/ J. Thomas Marten
J. Thomas Marten, Judge